**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.

No. 95-5357

TARIQ A. RAHMAN, a/k/a Ace
Johnson, a/k/a Graham Johnson,
Defendant-Appellant.

Appeal from the United States District Court
for the Eastern District of Virginia, at Richmond.
James R. Spencer, District Judge.
(CR-95-1)

Argued: March 4, 1996

Decided: May 9, 1996

Before WILKINSON, Chief Judge, and HALL and WILKINS,
Circuit Judges.

_____

Affirmed by published opinion. Judge Wilkins wrote the opinion, in
which Chief Judge Wilkinson and Judge Hall joined.

_____

**COUNSEL**

**ARGUED:** Steven Dwain Goodwin, STEVEN D. BENJAMIN &
ASSOCIATES, Richmond, Virginia, for Appellant. David T.
Maguire, UNITED STATES ATTORNEY'S OFFICE, Richmond,
Virginia, for Appellee.

_____

**OPINION**

WILKINS, Circuit Judge:

Tariq A. Rahman was convicted of six counts of making a false statement in connection with his acquisition of a firearm, see 18 U.S.C.A. § 922(a)(6) (West Supp. 1996), and six counts of unlawful possession of a firearm after having been convicted of a crime punishable by a term of imprisonment exceeding one year, see 18 U.S.C.A. § 922(g)(1) (West Supp. 1996). He appeals these convictions, principally arguing that the district court erroneously instructed the jury on an element of a § 922(a)(6) offense and that the evidence was insufficient to support his § 922(g)(1) convictions. We affirm.

I.

Viewing the evidence in the light most favorable to the Government, the record demonstrates the following. See Glasser v. United States, 315 U.S. 60, 80 (1942). While executing a search warrant at a Virginia residence, law enforcement officers seized two firearms. The Bureau of Alcohol, Tobacco, and Firearms (ATF) traced the serial numbers of the firearms and learned that they had been sold by the Virginia Police Equipment Company (VPEC), a local privately-owned business and a federally-licensed firearms dealer.

An inspection of VPEC records disclosed evidence indicating that Rahman had purchased these two firearms as well as four others. For each of these six weapons, VPEC records contained two pertinent documents: (1) a sales receipt listing the date of the transaction and showing Rahman as the purchaser and (2) a Firearms Transaction Record--an ATF form that federal law dictates must be completed prior to all firearm transactions--indicating that Rahman had completed and signed it on the same date as shown on the corresponding receipt. In response to the question on each of these ATF forms asking whether the transferee had been convicted of a crime punishable by a term of imprisonment exceeding one year, Rahman had answered, "No."

The parties stipulated that at the time of all of the sales Rahman was a convicted felon, that he was prohibited from possessing a fire-

2

arm, and that he was aware of both of these facts. In addition, the parties stipulated that the firearms had been manufactured outside of Virginia and had travelled in or affected interstate commerce prior to the dates of the sales. Further, defense counsel conceded in his opening statement that Rahman had completed and signed the ATF forms. And, expert testimony confirmed that the handwriting on the ATF forms was Rahman's and that his fingerprints had been discovered on one of them.

To rebut this impressive body of evidence pointing toward his guilt, Rahman argued that he did not reside at the Virginia residence where the two firearms were seized; that no evidence placed him in physical possession of any of the weapons; that he had acted merely as a straw purchaser in the firearm sales and had never taken possession of the weapons; and that federal law enforcement authorities had investigated and prosecuted VPEC for knowingly permitting straw purchasers to complete required ATF forms and purchase firearms in violation of federal law. With respect to this last assertion, the trial testimony revealed that VPEC had been involved in illegal firearm sales to straw purchasers, but no evidence was presented indicating that Rahman's purchases were related to VPEC's unlawful activities.

II.

The Fifth and Sixth Amendments guarantee that "criminal convictions [will] rest upon a jury determination that the defendant is guilty of every element of the crime with which he is charged, beyond a reasonable doubt." United States v. Gaudin, 115 S. Ct. 2310, 2313 (1995). Thus, "[t]he Constitution gives a criminal defendant the right to demand that a jury find him guilty of all the elements of the crime with which he is charged." Id. at 2314. We review de novo the legal question of whether a district court has properly instructed a jury on the statutory elements of an offense. See United States v. Fiel, 35 F.3d 997, 1005 (4th Cir. 1994), cert. denied, 115 S. Ct. 1160 (1995). However, in reviewing the propriety of jury instructions, we do not view a single instruction in isolation; rather we consider whether taken as a whole and in the context of the entire charge, the instructions accurately and fairly state the controlling law. See United States v. Park, 421 U.S. 658, 674-75 (1975).

Rahman's primary contention is that the district court incorrectly instructed the jury on one of the elements that the Government must prove in order to establish a violation of 18 U.S.C.A. § 922(a)(6). This statute provides in pertinent part that it shall be unlawful:

> for any person in connection with the acquisition . . . of any firearm . . . from a . . . licensed dealer . . . knowingly to make any false or fictitious oral or written statement . . . intended or likely to deceive such . . . dealer . . . with respect to any fact material to the lawfulness of the sale.

18 U.S.C.A. § 922(a)(6).

In charging the elements of a § 922(a)(6) offense, the district court gave the following instruction to the jury:

> [T]o establish a violation of Title 18 U. S. Code Section 922(a)(6), the United States, the [G]overnment, must establish beyond a reasonable doubt the following three elements. First, that the defendant acquired or attempted to acquire a firearm from a federally-licensed firearms dealer. Second, that in so doing, the defendant knowingly made a false or fictitious statement, orally or in writing, or knowingly furnished or exhibited a false or fictitious identification intended or likely to deceive such dealer. Third, that the subject of a false statement or identification was material to the lawfulness of the sale.

Transcript of Trial Proceedings Feb. 17, 1995 at 154-55. The district court then gave further instructions with respect to some of the terms used in this charge. Of relevance here, it charged that:

> A false statement or identification is likely to deceive if the nature of the statement or identification, considering all of the surrounding circumstances at the time it is made, is such that a reasonable person of ordinary prudence would have been actually deceived or misled.

Id. at 155.

4

Rahman argues that this instruction is erroneous because it defines "likely to deceive" as that which will deceive"a reasonable person." Noting that the statute specifies that the false statement must be likely to deceive "such" dealer, not a reasonable dealer, he contends that § 922(a)(6) requires that the false statement be intended or likely to deceive the specific dealer involved in the transaction. By instructing the jury that a false statement is likely to deceive if it would deceive a reasonable person, Rahman maintains, the jury was not free to accept his theory of defense--that VPEC was a participant in the illegal firearm sales and thus could not have been deceived by his statements.

Rahman's argument is misdirected. The challenged instruction provided the jury with guidance concerning how to evaluate whether a statement is a misrepresentation that is likely to cause deception: It properly directed the jury to apply an objective, or reasonable person, standard in evaluating the likelihood that a statement would deceive anyone.* If a jury concludes that a statement is likely to deceive--i.e.,

_____

*The plain language of § 922(a)(6) permits the Government to carry its burden of proof with respect to the second element in either of two ways. It may prove that a defendant's statement was intended to deceive the dealer or that the statement was likely to deceive the dealer. See United States v. Harrelson, 705 F.2d 733, 736 (5th Cir. 1983) (noting that § 922(a)(6) is a disjunctive statute). The "intended to deceive" prong focuses on the subjective mental state of the defendant, so the defendant must have intended deception of the dealer in order for the Government to obtain a conviction under this prong. See United States v. Brebner, 951 F.2d 1017, 1028 (9th Cir. 1991). Under the "likely to deceive" prong, on the other hand, the intent of the defendant to deceive the dealer is irrelevant; this clause focuses on the statement itself and whether it was likely to cause deception of the dealer. Evidence that a defendant made a knowing misrepresentation of a fact material to the legality of the sale is sufficient to permit a reasonable jury to conclude that the defendant possessed the intent to deceive the dealer or, alternatively, that his statement was likely to deceive such dealer. See United States v. Hernandez, 913 F.2d 1506, 1513 (10th Cir. 1990), cert. denied, 499 U.S. 908 (1991); United States v. Ortiz-Loya, 777 F.2d 973, 979-80 (5th Cir. 1985); United States v. Washington, 485 F.2d 578, 578-79 (5th Cir. 1973) (per curiam); United States v. Ledbetter , 432 F.2d 1223, 1225 (10th Cir. 1970) (per curiam).

5

that considering all of the surrounding circumstances, a reasonable person of ordinary intelligence would have been misled or deceived by the statement--the jury may properly infer that the false statement was likely to deceive "such" dealer.

Thus, the portion of the jury charge to which Rahman objects correctly charged how a jury should approach the issue of whether a statement is likely to deceive. This portion of the charge was not addressing the "such" dealer language in the statute, nor did it prohibit the jury from considering evidence that "such" dealer was not likely to be deceived by a statement that was likely to deceive a reasonable person. On the contrary, the jury was adequately informed of the statutory requirement that the defendant's false statement be intended or likely to deceive "such" dealer in the portion of the instructions setting forth the elements of the offense. Accordingly, we reject Rahman's argument that the challenged instruction erroneously prevented the jury from considering his defense theory.

III.

Rahman also maintains that the evidence was insufficient to support his convictions pursuant to § 922(g)(1). In evaluating the sufficiency of the evidence to support a criminal conviction, we must determine--viewing the evidence and all of the inferences reasonably to be drawn from it in the light most favorable to the Government-- whether a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 319 (1979); United States v. Tresvant, 677 F.2d 1018, 1021 (4th Cir. 1982).

In order to prove that Rahman violated § 922(g)(1), the Government was required to prove that (1) he "had been convicted in some court of a crime punishable by a term of imprisonment exceeding one year; (2) he thereafter voluntarily and intentionally possessed a firearm; and (3) the firearm had been shipped or transported in interstate or foreign commerce at some point during its existence." United States v. Langley, 62 F.3d 602, 604 (4th Cir. 1995) (en banc), cert. denied, 116 S. Ct. 797 (1996). Because the parties stipulated that he had been convicted of a crime punishable by a term of imprisonment exceeding one year and that the firearms had been shipped in inter-

6

state commerce prior to the sales, Rahman is relegated to asserting that the evidence was insufficient to demonstrate that he voluntarily and intentionally had possessed the firearms, either actually or constructively.

This argument is meritless. Store receipts listed Rahman as the purchaser of the firearms, and the dates of the receipts corresponded to those on the Firearms Transaction Records--forms that Rahman admittedly completed and signed. As such, the evidence clearly demonstrated that Rahman was present and purchased the firearms. Viewing this evidence and the reasonable inferences to be drawn from it in the light most favorable to the Government, we conclude that a rational jury could find that Rahman possessed the weapons at the time he purchased them. Cf. United States v. Wight, 968 F.2d 1393, 1395, 1397-99 (1st Cir. 1992) (noting that evidence sufficient to convict may be entirely circumstantial, with factfinder free to choose among reasonable interpretations of the evidence, and upholding sufficiency of the evidence to support § 922(g)(1) conviction on circumstantial evidence of knowing possession); United States v. McNeal, 900 F.2d 119, 121 (7th Cir. 1990) (holding that jury could reasonably infer that a defendant had possessed a firearm from circumstantial evidence that he had fired the weapon). Consequently, we hold that the evidence was adequate to support Rahman's § 922(g)(1) convictions.

IV.

In conclusion, we hold that the instructions given by the district court did not prevent the jury from considering Rahman's defense to the § 922(a)(6) charges and that the evidence was more than adequate to sustain his convictions under § 922(g)(1). We have carefully considered Rahman's remaining arguments and find them to be without merit. The judgment of the district court, therefore, is affirmed.

AFFIRMED

7